IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN L. SALAZAR,

       Plaintiff,

v.                                                                   Civ. No. 03-0170 JB/LCS

CO P. RYAN, et al.,

       Defendants.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**I.    Proposed Findings**

**THIS MATTER** is before the Court upon Plaintiff's complaint Pursuant to 42 U.S.C. § 1983 filed February 5, 2003 (Doc. 1) and upon Defendant's Motion for Summary Judgment filed May 15, 2003 (Doc. 15) as well as Plaintiff's Request for Preliminary Injunction filed May 6, 2003 (Doc. 17). Petitioner is proceeding *pro se*. I recommend that Defendants' Motion with regard to Defendants Seigman, Taylor, Landes, Williams, Snedeker, Hertzog, Horton, Miller, Brinistool and Perry is well-taken and should be **GRANTED** and that Defendants' Motion with regard to Defendant Ryan is not well-taken and should be **DENIED**. I also recommend that Plaintiff's Request for Preliminary Injunction is not well-taken and should be **DENIED**.

On October 9, 2002, Plaintiff left his pod to see his case manager, Joe Purvis. Compl. p. 6. He was met by Defendant Ryan and Defendant Seigman, both corrections officers. *Id.* Plaintiff reported that Defendant Ryan told him to go to the A Pod and that he complied. Def. Ex. A-16. As he began walking back to the A Pod, Plaintiff reported that Defendant Ryan hit his shoulder, tripped him, pushed him to the ground, and hit the back of his head. *Id.* It was reported that no inmates were present in the immediate area of the incident. Def. Ex. A-25. Nonetheless, Plaintiff submitted

statements from various inmates who witnessed the incident and stated that Plaintiff did not initiate contact with Defendant Ryan. Inmate Gutierrez stated that he looked out of the A Pod window and saw Defendant Ryan push, shove, and trip Plaintiff from behind and then hit Plaintiff on the back and on the head as he brought Plaintiff to the ground. Pl. Ex. D. Inmate Shutco stated that Defendant Ryan threw Plaintiff to the ground without provocation. Pl. Ex. E. Inmate Luck reported that he "clearly witnessed" Defendant Ryan "slam" Plaintiff but that he never saw Plaintiff use his shoulder or hands to hit Defendant Ryan. Pl. Ex. B. Finally, Inmate Wesley saw Defendant Ryan attack Plaintiff from behind without provocation. Pl. Ex. C.

Defendant Ryan reported that after he ordered Plaintiff back to his pod, Plaintiff put his shoulder into Defendant Ryan's chest and pushed him out of the way with his shoulder. Def. Ex. A-19. At that point, Defendant Ryan placed his foot in front of Plaintiff's leg, placed Plaintiff on the ground, and secured Plaintiff's hands behind his back. *Id.* Defendant Seigman stated that after Defendant Ryan ordered Plaintiff back to his pod, he turned away and did not see the scuffle between Plaintiff and Defendant Ryan but did help to secure Plaintiff's feet. Def. Ex. A-21. As Defendant Perry arrived on the scene, Defendant Ryan was holding Plaintiff's hands behind his back and Defendant Seigman was holding Plaintiff's legs. Def. Ex. A-29. Defendant Perry immediately handcuffed Plaintiff. *Id.* After helping Plaintiff to his feet, Defendant Perry escorted Plaintiff to medical personnel so that he could be examined. *Id.* Corrections Officer Dutton corroborated Defendant Ryan's version of the story that Plaintiff initiated the assault and that Defendant Ryan's use of force was to restore order. A-7.

As a result of the incident, Plaintiff claimed that he suffered from abdominal, head, back and neck pains. Def. Ex. A-1. In addition, he claimed that there was blood in his urine. *Id.* In a Medical

Encounter Record completed several hours after the incident, an LPN at the prison stated that there were traces of "dark red" in toilet after Plaintiff urinated and that Plaintiff held his abdomen during the evaluation. Def. Ex. B. She advised that Plaintiff see a health care provider the next morning. *Id.* According to Ms. Johnson, RN, who saw Plaintiff immediately after the incident, Plaintiff sustained no injury and he was returned to the prison population. Def. Ex. A-32. Finally, Plaintiff saw a prison physician two days after the incident who reported that Plaintiff had an area of abdominal tenderness with intermittent vomiting and nausea. Def. Ex. C. The physician advised that Plaintiff's temperature and pulse be monitored. *Id.* Ms. Johnson also attended to Defendant Ryan and stated that the nature of his injury was unknown at the time of her report and that he was under physician care for his blood pressure. Def. Ex. A-35. Ms. Johnson reported that Defendant Seigman suffered no injuries as a result of the day's events. Def. Ex. A-36. Thus, neither Defendant Ryan nor Defendant Seigman suffered any substantial injury during the course of the altercation. Def. Ex. A-4.

## II.    Standard

This court liberally construes *pro se* litigants' pleadings and holds them to a less stringent standard than required of those prepared by a lawyer. *See Gillihan v. Shillinger*, 872 F.2d 935, 938 (10th Cir. 1989). At the same time, the court may not assume the role of advocate for the *pro se* litigant, and need not accept as true unsupported conclusory allegations. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and...the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Muñoz v. St. Mary Corwin Hosp.*, 221 F.3d 1160, 1164

(10th Cir. 2000) (quoting Rule 56(c)). When applying this standard, the Court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.*

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the ulitmate burden of persuasion at trial, it may satisfy is burden at the summary judgment stage by identifying "a lack of evidence for the non movant on an essential element of the non movant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 644, 671 (10th Cir. 1998). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof. See Muñoz, 221 F.3d at 1164. It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 586. An issue of material fact is genuine ifa reasonable jury could return a verdict for the party opposing the motion. *See Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1313 (10th Cir. 1999). The substantive law at issue determines which facts are material in a given case. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

## III.   Analysis

### Excessive Force

The core inquiry for determining the merits of Eighth Amendment excessive force claims by prisoners is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992); *see also Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). In this regard, the "extent of injury may be relevant in determining whether corrections officers unnecessarily and wantonly inflicted pain; however, its absence does not end the inquiry." *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court should also consider other factors, such as the relationship between the need of the application of force, the amount of force actually used, the threat reasonably perceived by the prison officials, and any efforts made to assuage the severity of the use of force. *Id.* at 1523-24.

The Supreme Court has also held that *de minimus* applications of force are necessarily excluded from the cruel and unusual punishment inquiry. *Hudson*, 503 U.S. at 10. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.), *cert. denied sub nom John v. Johnson*, 4143 U.S. 1033 (1973). Another precept in evaluating these claims is that courts should afford prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986) (citation omitted).

**Defendant Ryan**

Applying these standards, and after reviewing the parties' submissions contained in the instant motion, there is a genuine issue of material fact on Plaintiff's Eighth Amendment claim against Defendant Ryan.  First, based upon the evidence before me, there is a genuine issue of material fact as to "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6.  Defendant Ryan maintains that Plaintiff initiated contact when he struck him with his shoulder and in an effort to restore order, he subsequently placed his foot in front of Plaintiff's leg and secured Plaintiff on the ground.  Def. Ex. A-19.  However, Plaintiff has presented contrary evidence in the form of statements from Inmates Gutierrez, Shutco, Luck, and Wesley reporting that Defendant Ryan attacked Plaintiff from behind as he was returning to his cell, brought him to the ground, and hit him on the back of his head, for no reason at all.  Pl. Ex. B-E.  Each statement corroborates Plaintiff's description of the facts that Defendant Ryan initiated contact and brought Plaintiff to the ground without any justification.  *Id.*

Second, the evidence shows a disagreement as to the extent of Plaintiff's injuries.  Plaintiff claimed that as a result of Defendant Ryan's attack, he suffered abdominal, head, back and neck pains and that there was blood in his urine.  Def. Ex. A-1.  Immediately after the altercation, Ms. Johnson, RN, examined Plaintiff and reported that he sustained no injuries. Def Ex. A-32.  However, an LPN noted that there appeared to be blood in Plaintiff's urine and that Plaintiff was holding his abdomen during the examination.  Def. Ex. B.  Further, a physician's report two days after the incident states that Plaintiff had continued abdominal pain with intermittent nausea and vomiting.  Def. Ex. C.

On summary judgment, the Court must examine the record and make all reasonable inferences in the light most favorable to the non-moving party.  *Muñoz*, 221 F.3d at 1164.  The facts, viewed

in the light most favorable to Plaintiff, show that while Plaintiff was returning to his cell, Defendant Ryan, without reason, approached Plaintiff from behind and brought him to the ground, hit him on the back of his head, and that after the incident Plaintiff suffered from head, neck, and abdominal pains and there was blood in his urine as well.  On these facts, a reasonable jury could conclude that Defendant Ryan's behavior falls into the category of malicious and sadistic rather than a good faith effort to restore discipline.  As the record now stands, Defendant Ryan is not entitled to summary judgment.

### Defendant Seigman

Applying the *Hudson/Whitley* standard, and after reviewing the parties' submissions contained in the instant motion, there is no genuine issue of material fact for trial on Plaintiff's Eighth Amendment claim of excessive force against Defendant Seigman.  Defendant Seigman was present during the incident, as he had asked Plaintiff to return to his cell.  Def. Ex. A-16; Def. Ex. A-21.  However, Defendant Seigman reported that he did not witness the altercation between Defendant Ryan and Plaintiff but  he did help secure Plaintiff's feet after the scuffle.  Def. Ex. A-21.  Further, Plaintiff never reported that Defendant Seigman physically attacked him, nor did his witnesses report that Defendant Seigman instigated  the physical assault.  Def. Ex. A-16, Pl. Ex. B-E.

Defendant Seigman has met his initial burden by showing that there is an absence of evidence to support Plaintiff's Eighth Amendment claim of excessive force.  See *Celotex*, 477 U.S. at 323. The burden then shifts to Plaintiff demonstrate a genuine issue for trial.  *McGarry*, 175 F.3d at 1201. Plaintiff has the burden of setting forth specific facts showing there is a genuine issue for trial. *Muñoz*, 221 F. 3d at 1164.  Plaintiff has submitted no evidence that demonstrates a genuine issue for trial against Defendant Seigman, in fact he never alleged, nor does he have any witnesses who state

that Defendant Seigman initiated any physical assault upon Plaintiff. Def. Ex. A-16, Pl. Ex. B-E. Further, the act of securing Plaintiff's feet cannot be seen as a violation of Plaintiff's Eight Amendment right. Thus, there is no genuine issue of material fact for trial as to "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6. Defendant Seigman is entitled to summary judgment on Plaintiff's claim of excessive force.

### **Defendant Perry**

Applying the *Hudson/Whitley* standard, and after reviewing the parties' submissions contained in the instant motion, there is no genuine issue of material fact for trial on Plaintiff's Eighth Amendment claim of excessive force against Defendant Perry. Defendant Perry did not arrive on the scene until after the incident occurred and his only involvement was handcuffing Plaintiff and escorting him to get medical attention. Def. Ex. A-29.

Like Defendant Seigman, Defendant Perry has shown that there is an absence of evidence to support Plaintiff's Eighth Amendment claim of excessive force. See *Celotex*, 477 U.S. at 323. Plaintiff again failed to meet his burden by setting forth specific facts showing there is a genuine issue for trial. *Muñoz*, 221 F. 3d at 1164. Plaintiff presents no evidence indicating active participation of Defendant Perry in the assault. Def. Ex A-16, Pl. Ex. B-E. Handcuffing Plaintiff is not a violation of Plaintiff's Eighth Amendment right. Again, there is no genuine issue of material fact for trial as to "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6. Defendant Perry is entitled to summary judgment on Plaintiff's claim of excessive force.

**Defendants Landes and Miller**

To the extent that Plaintiff alleges an Eighth Amendment claim of excessive force against Defendants Landes and Miller, after applying the *Hudson/Whitley* standard and after reviewing the parties' submissions contained in the instant motion, there is no genuine issue of material fact for trial on against Defendants Landes and Miller.  Plaintiff asserts in his complaint that Defendants Landes and Miller were "in the area during the later part of the physical abuse."  Compl. p. 7.  There is no evidence in the record that either Defendant Landes or Defendant Miller particpated in the assault on Plaintiff.  Thus, there is no genuine issue of material fact for trial as to "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm" because neither Defendant Landes nor Defendant Miller applied any force.  *Hudson*, 503 U.S. at 6.  Defendants Landes and Miller are entitled to summary judgment on Plaintiff's claim of excessive force.

**Defendants Taylor, Williams, Snedeker, Hertzog, Horton, and Brininistool**

The record is devoid of any evidence of personal participation by Defendants Taylor, Williams, Snedeker, Hertzog, Horton and Brininistool.  Mere supervisory status is not enough to support liability in a § 1983 claim under the Eighth Amendment.  *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996); *see also Rizzo v. Goode*, 423 U.S. 362, 376 (1976), *Mitchell v. Maynard*, 80 F. 3d 1433, 1441 (10th Cir. 1996).  "A supervisor is not liable under § 1983 for the actions of a subordinate unless an 'affirmative link' exists between the constitutional deprivation and either the supervisor's personal participation or his failure to supervise."  *Id.*; *see also Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).  Defendants Taylor, Williams, Snedeker, Hertzog, Horton and Brinistool were not involved in the incident.  While Plaintiff asserts in his Response that Defendants

9

failed to supervise, there is no evidence in the record to support this claim. Pl. Resp. p. 15. Without personal involvement or participation in the incident or evidence of a failure to supervise, these Defendants are entitled to summary judgment.

### **Failure to Protect**

To the extent that Plaintiff asserts a failure to protect claim under the Eighth Amendment against all Defendants, Defendants are entitled to summary judgment on this claim. The Eighth Amendment imposes a duty "on prison officials to protect prisoners in custody from violence *at the hands of other prisoners*" (emphasis added). *Id.*; see also *Farmer v. Brennan*, 511 U.S. 825 (1994). Clearly, the instant case is not one in which Plaintiff alleges violence at the hands of another inmate. Nonetheless, there are a line of cases that support Plaintiff's proposition that the Eighth Amendment imposes a broader duty on prison officials. In *Sasa v. Zavaras*, the Court noted that a "prison official may be liable for a failure to protect an inmate from use of excessive force if the official is deliberately indifferent to a substantial risk of serious harm to [an] inmate." *Sasa v. Zavaras*, 1998 U.S.App. Lexis 31001; *see also Hovater v. Robinson*, 1 F.3d 1068 (10th Cir. 1993). Thus, the duty is not limited only to excessive force at the hands of other inmates, but includes excessive force at the hands of prison officials if there is a "substantial risk of serious harm." Even applying this more stringent standard, there is no evidence in the record to suggest that Defendants were "deliberately indifferent to a substantial risk of serious harm to [an] inmate." There was one, isolated scuffle between Plaintiff and Defendant Ryan. There is no evidence in the record that there were further physical assaults or injuries suffered by Plainitff or any other indicator that Plaintiff was in serious danger of attack by Defendant Ryan. Thus, all Defendants are entitled to summary judgment on Plaintiff's failure to protect claim.

**New Mexico Tort Claims Act**

To the extent that Plaintiff alleges state tort claims against Defendants, they are barred by the New Mexico Tort Claims Act ("NMTCA"). The NMTCA requires that any person claiming damages from a governmental body must give written notice to that entity within 90 days of the occurrence unless the entity has actual notice. *See* Section 41-4-16(A)-(B); *Dutton v. McKinley County Bd. of Comm'rs*, 113 N.M. 51, 53 (N.M. Ct. App. 1991). Plaintiff's written notice was not timely as it was dated on January 9, 2003, more than 90 days after the incident which took place on October 9, 2002. Pl. Ex. A. In determining whether there was actual notice, it is not enough to show that another governmental agency or employee had actual notice of the accident. *Dutton*, 113 N.M. at 53. Rather, the governmental entity must be aware of the likelihood of litigation. *Id.; See also*, Powell v. New Mexico State Highway and Transp. Dep't, 117 N.M. 415 (N.M. Ct. App. 1994). There is no evidence in the record that Plaintiff even remotely indicated to Defendants that he was going to sue claiming state law torts. Thus, they were not aware of the probability of litigation. As such, Defendants had no actual notice as required by the NMTCA. Since Defendants had neither timely written notice nor actual notice, all claims arising under the NMTCA are barred. Moreover, the Court lacks jurisdiction over the claim. Section 41-4-6(B) NMSA (1978 Comp.) "[N]o Court shall have jurisdiction to consider any suit or action against the state . . . unless notice has been given as required by this section . . . .") Summary judgment should be entered in favor of all Defendants on this count.

**Preliminary Injunction**

On May 6, 2003, Plaintiff filed a Preliminary Injunction (Doc. 17) requesting that he be moved from Lea County Correctional Facility to the Central New Mexico Correctional Facility in order to

be protected from Defendants. Plaintiff was transferred from Lea County Correctional Facility to PNM on May 13, 2003. Def. Resp. Ex. B. Thus, Plaintiff is no longer a prisoner under Defendants' authority and as such his request is moot since the relief he sought, protection from Defendants, has been fulfilled. *See, Green v. Branson*, 108 F. 3d 1296, 1298 (10th Cir. 1997). Further, even if Plaintiff had not been transferred, a prisoner has no consitutional right to request placement in a particular facility. *Prows v. Federal Bureau of Prisons*, 981 F.2d 466, 468 (10th Cir. 1992). Even if conditions at the receiving prison are much worse than conditions at the sending prison, the prisoner has no constitutional protection against the transfer. *Meachum v. Fano,* 427 U.S. 215, 225 (1976). Plaintiff's request for a preliminary injunction should be denied.

## IV.     Recommended Disposition

I recommend that summary judgment be granted in favor of Defendants Seigman, Taylor, Landes, Williams, Snedeker, Hertzog, Horton, Miller, Brinistool, and Perry and against Plaintiff. The claims against Defendant Ryan remain pending, with a ruling on punitive damages to be deferred. Further, I recommend Plaintiff's Request for Preliminary Injunction be denied.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to § 636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102.

A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　**LESLIE C. SMITH**
　　　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**